IN THE UNITED STARES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

Montaz Kennedy

    Plaintiff

v

India Smith, John Doe,

Johnny Thomas, Ronald Black,

Herbert Morris

    Defendant(s)

_____/

Case: 2:23-cv-13185
Assigned To : Drain, Gershwin A.
Referral Judge: Grand, David R.
Assign. Date : 12/14/2023
Description: COMP KENNEDY V. SMITH, ET. AL (KB)

Jury Trial Requested

42 U.S.C. 1983

42 U.S.C. 1985

Complaint for Civil Case

The Parties to This Complain

A. The Plaintiff:

Montaz Kennedy

16475 Avon

Detroit, Michigan 48219

Wayne County

(313) 419-5578

Email: thelostboy28@yahoo.com

B. The Defendant(s):

Defendant No. 1

India Smith

Highland Park Police Corporal

Highland Park Police Department

Badge No. 553

14112 Woodward Ave.

Highland Park, Michigan 48203

Wayne County

Defendant No. 2

John Doe

Highland Park Police Officer

Highland Park Police Department

Badge No.

14112 Woodward Ave.

Highland Park, Michigan 48203

Wayne County

Defendant No. 3

Johnny Thomas

Highland Park Police Chief

Highland Park Police Department

14112 Woodward Ave.

Highland Park, Michigan 48203

Wayne County

Defendant No. 4

Ronald Black

Detroit Rescue Mission Ministries

150 Stimson

Detroit, Michigan 48201

Wayne County

Defendant No. 5

Herbert Morris

Operations Supervisor

Detroit Rescue Mission Ministries

150 Stimson

Detroit, Michigan 48201

Wayne County

    or

Herbert Morris

Operations Supervisor

Detroit Rescue Mission Ministries

13220 Woodward Ave.

Highland Park, Michigan 48203

Wayne County

Jurisdiction is proper under 28 U.S.C. 1331

All defendants are sued under the color of law

All defendants are sued in their individual and official capacity

STATEMENT OF CLAIMS:

CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS/RETALIATION/ILLEGAL DETAINMENT/INTENTIONAL INFLECTIONS OF EMOTIONAL DISTRESS/FAILURE TO INTERVENE/RETALIATORY SUPPRESSION OF FREE SPEECH

1). That Plaintiff (Pl.) Montaz (Kennedy) did reside as a homeless guest at Detroit Rescue Mission Ministries (D.R.M.M.) at 13220 Woodward Ave., Highland Park, Michigan 48203 at all times relevant to this complaint.

2). That Defendant (Def.) Highland Park Police Corporal (H.P.P.C.) India (Smith) was employed with the Highland Park Police Department (H.P.P.D.) at all times relevant to this complaint.

3). That on October 19, 2022, Pl. Kennedy upon returning to the D.R.M.M. from the Burger King restaurant noticed one (1) of his fellow homeless residents of the D.R.M.M. making a complaint to H.P.P.C. Def. Smith and Highland Park Police Officer (H.P.P.O.) Def. John (Doe) while standing in front of the Pizza Restaurant on Woodward Ave. next door to the D.R.M.M.

4). That at that time Pl. Kennedy stopped in front of the restaurant way out of the area of control of H.P.P.C. Def. Smith and H.P.P.O. Def. Doe and observed the interaction between H.P.P.C. Def. Smith and H.P.P.O. Def. Doe with Pl. Kennedy's fellow D.R.M.M. homeless resident.

5). That after H.P.P.C. Def. Smith and H.P.P.O. Def. Doe finished speaking with Pl. Kennedy's fellow D.R.M.M. homeless resident. H.P.P.C. Def. Smith and H.P.P.O. Def. Doe entered their squad vehicles and drove off.

6). That after H.P.P.C. Def. Smith and H.P.P.O. Def. Doe left the area Pl. Kennedy noticed his fellow D.R.R.M. homeless resident walking down Woodward Ave. in the north direction with another man that Pl. Kennedy did not know.

7). That Pl. Kennedy called out to his fellow D.R.M.M. homeless resident and gestured to him that he wanted to speak with him.

8). That Pl. Kennedy and his fellow D.R.M.M. homeless resident met up on Woodward Ave. and Pl. Kennedy asked him what had happened and why H.P.P.C. Def. Smith asked him a particular question.

9). That while Pl. Kennedy and his fellow D.R.M.M. homeless resident was speaking with each other, H.P.P.C. Def. Smith pulled up on the side of the road in their squad vehicle by Pl. Kennedy and the fellow D.R.M.M. homeless resident facing the wrong way on Woodward Ave.

10). That while Pl. Kennedy and the fellow D.R.M.M. homeless resident were in mid conversation H.P.P.C. Def. Smith uninvited, interjected herself into the conversation between Pl. Kennedy and the fellow D.R.M.M. homeless resident from the seat of her squad vehicle.

11). That H.P.P.C. Def. Smith became belligerent while speaking with Pl. Kennedy and the fellow D.R.M.M. homeless resident.

12). That after Pl. Kennedy had gotten fed up with how H.P.P.C. Def. Smith was conducting themselves Pl. Kennedy told his fellow D.R.M.M. homeless resident "Get her name and badge number and I will show you what to do about her."

13). That upon Pl. Kennedy stating this to his fellow D.R.M.M. resident, Def. H.P.P.C. Smith rambled off their last name and badge number.

14). That Pl. Kennedy then asked H.P.P.C. Def. Smith their first name.

15). That H.P.P.C. Def. Smith refused to give Pl. Kennedy their first name.

16). That, once H.P.P.C. Def. Smith realize Pl. Kennedy was going to aid and assist the fellow D.R.M.M. homeless resident file, and file himself, a complaint on H.P.P.C. Def. Smith. H.P.P.C. Def. Smith drove their squad vehicle the wrong way down Woodward Ave. to the front of the D.R.M.M. homeless shelter.

17). That H.P.P.C. Def. Smith exited their vehicle and entered the D.R.M.M. homeless shelter.

18). That Pl. Kennedy also entered the homeless shelter behind H.P.P.C. Def. Smith.

19). That H.P.P.C. Def. Smith went straight to the D.R.M.M. main office and started demanding to know who Pl. was.

20). That upon hearing H.P.P.C. Def. Smith inquires of who Pl. Kennedy was, Pl. Kennedy stopped and gave H.P.P.C. Def. Smith, his first and last name and then continued to the day room area of the homeless shelter.

21). That H.P.P.C. Def. Smith met with Def. Herbert (Morris) prior to Def. Morris

having entered the day room, and conspired to and came to an agreement together that Def. Morris would retrieve Pl. Kennedy to stand before H.P.P.C. Def. Smith despite that Def. Morris was not told that Pl. Kennedy had done anything illegal by Def. H.P.P.C. Smith.

22). That while Pl. Kennedy was in the day room, D.R.M.M., at that time job title, Building Director, Def. Herbert (Morris) came into the day room and told Pl. Kennedy that he wanted him to come to his office.

23). That, between 4:00 p.m. to 5:00 p.m. when Pl. Kennedy and H.P.P.C. Def. Smith entered Def. Morris's office. H.P.P.C. Def. Smith started making spurious claims about Pl. Kennedy to Def. Morris, that Pl. Kennedy was intervening in a Police investigation which would have been illegal for Pl. Kennedy to have engaged in.

24). That H.P.P.C. Def. Smith made the spurious claims of illegal conduct about Pl. Kennedy to Def. Morris in an attempt to detrimentally affect Pl. Kennedy's residence at the homeless shelter, for the sole reason to get back at Pl. Kennedy for threatening to help his fellow homeless shelter resident file a complaint on them.

25). That Pl. Kennedy knowing if H.P.P.C. Def. Smith's spurious claims of illegal conduct were allowed to go uncontested that Pl. Kennedy would suffer irreparable harm from Def. Morris, strongly contested the nefarious lies H.P.P.C. Def. Smith was telling Def. Morris.

26).  That once H.P.P.C. Def. Smith realized that Pl. Kennedy wouldn't stand around and let H.P.P.C. Def. Smith detrimentally harm him with false allegations of illegal conduct. Reached down to their side and pulled out their handcuffs with their right hand and held them up in front of Pl. Kennedy while stating, "At the end of the day."

27). That Pl. Kennedy looked at H.P.P.C. Def. Smith's chest area to be sure that their body camera was on to catch the entire incident.

28). That, when H.P.P.C. Def. Smith pulled the handcuffs out and stated what they said, Pl. Kennedy had a clear understanding that he was about to be arrested.

29). That Pl. Kennedy, as a direct result of H.P.P.C. Def. Smith pulling their handcuffs out on Pl. and making a verbal indication of imminent arrest, made no

move to leave Def. Morris's office and especially H.P.P.C. Def. Smith's presence.

30). That while H.P.P.C. Def. Smith was verbally abusing Pl. Kennedy, as well as threatening Pl. Kennedy with arrest. H.P.P.O. Def. John (Doe) entered Def. Morris's office and heard and saw the misconduct H.P.P.C. Def. Smith was engaging in against Pl. Kennedy.

31). That at no time while H.P.P.C. Def. Smith was engaged in the conduct of threatening Pl. Kennedy with unwarranted arrest did Def. H.P.P.O. Def. Doe discourage or otherwise stop H.P.P.C. Def. Smith from subjecting Pl. Kennedy to the unwarranted detainment he witnessed.

32). That, when H.P.P.O. Def. Doe entered Def. Morris's office Pl. Kennedy took a quick glance over to H.P.P.O. Def. Doe's chest to ensure himself that Def. Doe had his body camera on as required.

33). That H.P.P.C. Def. Smith met and conspired with Def. Morris prior to Def. Morris entering the day room to retrieve Pl., and came to an agreement that was actually carried out, that Def. Morris would retrieve Pl. Kennedy to stand before H.P.P.C. Def. Smith, despite that Def. Morris was not told that Pl. Kennedy had done anything illegal by H.P.P.C. Def. Smith and H.P.P.C. Def. Smith knew Pl. Kennedy had not engaged in any illegal conduct.

34). That Def. Morris had reviewed Pl. Kennedy's file done on Pl. at intake and was well aware that Pl. Kennedy suffered from a severe mental illness that caused him to be paranoid.

35). That Pl. Kennedy, as a direct result of Def. Morris and H.P.P.C. Def. Smith's collaborating together, coming to agreement and actually carrying out the subjecting Pl. Kennedy to unwarranted pulling their handcuffs out and using words to help support Pl. couldn't leave their presence all in response that Pl. Kennedy threatened to help and file himself a complaint on Def. H.P.P.C. Def. Smith lost sleep, didn't trust eating a lot of the food at the homeless shelter, and lived in fear of all the H.P.P. for the rest of his residence at the D.R.M.M. homeless shelter.

FAILURE TO SUPERVISE/INTENTIONALLY, DELIBERATELY AND KNOWINGLY MAINTAINING A CUSTOM AND POLICY OF AN INADEQUATE TRAINING PROGRAM/FAILURE TO HAVE PROPERLY SUPERVISED/CONSPIRACY TO COVER UP

CRIMINAL CONDUCT

36). That Highland Park Police Chief (H.P.P. Chief) Johnny (Thomas) has repeatedly failed to ensure not only H.P.P.C. Def. Smith and H.P.P.O. Def. Doe were properly trained during his tenure as Chief of Police. H.P.P.Chief Thomas has also failed to ensure the rest of the Highland Park Police Department (H.P.P.D.) were properly trained during his tenure as Chief of Police.

37). That, there have been numerous incidents in the past where the Highland Police, including H.P.P.C. Def. Smith and H.P.P.O. Def. Doe have engaged in illegal conduct against not only the citizens of Highland Park but also any other citizens of this Country who happened to be visiting that City in the form of illegal detainment, retaliation, illegal arrest, intimidation, covering up illegal misconduct,

38). That H.P.P. Chief Def. Thomas has been aware of the State Tort and Federal Constitutional violations that his H.P.P.O's have repeatedly engaged in with the Citizens in the City of Highland Park.

39). That H.P.P. Chief Def. Thomas has maintained an injurious custom and policy of encouragement for his officers to engage in illegal conduct, by allowing to go unchecked, his Highland Park Police Officers harming Citizens for incidents that don't even rise to the level of a misdemeanor offense. Especially when they are dealing with the homeless men and women of the streets, homeless shelters and similar institutions/programs that provide help to like people.

40). That, due to the injurious custom and policies of Def. Thomas in failing to have his officers properly trained and or supervised. Pl. Kennedy suffered fear and humiliation of having been illegally detained in Def. Morris's office and threatened with arrest by H.P.P.C. Def. Smith.

CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS/INTIMIDATION OF A WITNESS/ATTEMPT TO DESTROY EVIDENCE OF ILLEGAL CONDUCT/RETALIATION/INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

41). That on October 20, 2022, Pl. Kennedy spoke with the then D.R.M.M.,

Operating Supervisor, Ms. Adaline (Ramsey), and asked her to pull and hold the video footage for October 19, 2022, between 4:00 p.m. to 5:00 p.m. showing the outside front of the D.R.M.M., the inside near the staff's office door and the area showing going back to Def. Morris's office, as well as the entering of the office.

42). That Ms. Ramsey verbally told Pl. Kennedy at that time when he spoke with her that she would look into the matter.

43). That any authorization of having video footage pulled and held has to be first cleared by Def. Morris who at the time was the D.R.M.M. Building Director.

44). That on October 20, 2022, Pl. Kennedy walked into Robert B. Blackwell Municipal Building at 12050 Woodward Ave., Highland Park, Michigan 48203, and filed a Freedom of Information Act (F.O.I.A.) request dated October 20, 2022, with the City of Highland Park designated F.O.I.A. coordinator.

45). That after having trouble with the designated F.O.I.A. coordinator in filing Pl. Kennedy's October 20, 2022 request. Pl. Kennedy sent the designated F.O.I.A. coordinator a letter, by certified mail, dated October 21, 2022, demanding that Pl.'s request be processed.

46). That after not having received a response from Ms. Ramsey to Pl. Kennedy's verbal request to hold the video footage of October 19, 2022, between 4:00 p.m. to 5:00 p.m. Pl. Kennedy wrote out a request for the video footage dated October 24, 2022, addressed to Ms. Ramsey.

47). That Pl. Kennedy sent a copy of his October 24, 2022, written request addressed to Ms. Ramsey, also to Def. Morris, as well as other D.R.M.M. officials.

48). That on October 26, 2022, Pl. Kennedy received an email from the designated F.O.I.A. coordinator informing Pl. Kennedy that his October 20, 2022, F.O.I.A. submission had been processed and a response would be provided to it in ten (10) business days.

49). That Def. Morris between October 20, 2022 and October 26, 2022, contacted H.H.P.C. Def. Smith and informed Def. H.P.P.C. Smith that Pl. Kennedy was trying to secure the video for the date and time they were there and had engaged in the misconduct, that being October 19, 2022.

50). That on October 27, 2022, Def. Morris asked Pl. Kennedy to sit down at a

dining table inside the D.R.M.M. 13220 Woodward Ave. location to speak with him.

51). That while Def. Morris was speaking with Pl. Kennedy, Def. Ronald (Black), the Director of D.R.M.M. apartment program of some sort. Which is directly next door to the D.R.M.M. homeless shelter Pl. Kennedy resided, walked into the D.R.M.M. 13220 Woodward Ave. location where Pl. Kennedy resided, through the side door, while Pl. Kennedy was sitting at the dining table talking with Def. Morris, and blurted out loud in an intimidating manner, "Who is Montaz Kennedy?"

52). That's when Pl. Kennedy spoke up and said "I am."

53). That, when Def. Black seen and heard Pl. Kennedy acknowledge himself as the person Def. Black inquired of, Def. Black did not say one (1) more single word to Pl. Kennedy but instead while looking directly at Pl. Kennedy stated out loud so to ensure Pl. Kennedy heard him "It's Corporal Smith." and handed the phone to Def. Morris in front of Pl. Kennedy.

54). That Def. Morris retrieved the phone from Def. Black and started talking with H.P.P.C. Def. Smith, initially while sitting in front of Pl. Kennedy.

55). That very shortly after speaking with H.P.P.C. Def. Smith in front of Pl. Kennedy Def. Morris got up from the table where he was sitting with Pl. Kennedy walked out the side door of the D.R.M.M. homeless shelter while still talking on the phone to H.P.P.C. Def. Smith.

56). That although Pl. Kennedy did not know the exact time period Def. Morris was on the phone with H.P.P.C. Def. Smith. Pl. Kennedy does know that it was for a very significant period of time as the phone records to that particular cell phone def. Morris was utilizing will evidence.

57). That, when Def. Morris came back into the building, a little later, Pl. Kennedy inquired of Def. Morris what was H.P.P.C. Def. Smith calling him about Pl. Kennedy for.

58). That Def. Morris, without going into detail, informed Pl. Kennedy that H.P.P.C. Def. Smith was inquiring of Def. Morris about the October 19, 2022, video footage of themselves inside the D.R.M.M. during the time in question of this complaint.

59). That H.P.P.C. Def. Smith's only reason for calling Def. Morris about the

October 19, 2022, video footage, was to request that Def. Morris destroy the video evidence of that date and relevant time.

60). That prior to October 27, 2022, Pl. Kennedy sent the Director of Homeless Solutions, Ms. Terra (Linzner) an email dated October 20, 2022, informing her that he made a timely request for the October 19, 2022, video footage to be pulled and secured for Pl. Kennedy, of the D.R.M.M. staff.

61). That at sometime between October 20, 2022, and November 1, 2022, Def. Morris called Pl. Kennedy into his office and informed Pl. that per the D.R.M.M. administration down at the 150 Stimson street offices, the video footage of October 19, 2022, will be held for Pl. Kennedy but the only way it will be provided to Pl. Kennedy, is if Pl. Kennedy requested it in a Court proceeding.

62). That the mere fact that H.P.P.C. Def. Smith was comfortable enough to call Def. Morris with a request and plan to destroy the video footage of H.P.P.C. Def. Smith's illegal conduct inside the homeless shelter on Pl. Kennedy caused Pl. Kennedy to understand and worry more to an extent that his well being would always be in detriment with the Highland Park Police and especially with H.P.P.C. Def. Smith.

63). That while Def. Black was on the phone with H.P.P.C. Def. Smith, Def. Black conspired with H.P.P.C. Def. Smith by discussing and came to an agreement with them that he would intimidate Pl. Kennedy for H.P.P.C. Def. Smith to deter Pl. Kennedy from pursuing any complaints on H.P.P.C. Def. Smith.

64). That Pl. Kennedy got the understanding from Def. Blacks conduct that Pl. was being intimidated in the manner of letting Pl. know that he can be touched and harmed by the H.P.P. at any time while Pl. Kennedy resided in the Oasis homeless shelter and by D.R.M.M. Oasis staff.

65). That the fear Pl. lived in, of the H.P.P. including H.P.P.C. Def. Smith was compounded due to Def(s). actions the entire time after October 20, 2022 and October 27, 2023, due to conduct of H.P.P.C. Def. Smith, Def. Morris and Def. Blacks.

66). That Pl. Kennedy lived in fear of the D.R.M.M. Oasis staff, Def. Morris and Def. Blacks, as well as all other staff at that location for the rest of Pl.'s stay at the Oasis homeless shelter.

67). That Pl. Kennedy became extremely paranoid and started becoming increasingly aggressive towards people who were trying to help him including family due to the lapse in his mental state as a result of what Def(s). had been subjecting him to.

CLAIMS FOR RELIEF:

COUNTS

1). That, the actions of H.P.P.C. Def. Smith and Def. Morris of having conspired and came to an agreement together which resulted in the carrying out of, that they were going to assist in and directly subject Pl. Kennedy to verbal and physical intimidation and illegal detainment for Pl. Kennedy speaking out about the mishandling of a police investigation and informing a citizen that he will show him how to make a complaint as well as make one himself on H.P.P.C. Def. Smith constituted retaliation in violation of the First Amendment to the United States Constitution.

2). That, the actions of H.P.P.C. Def. Smith and Def. Morris conspired together and came to an agreement together, which resulted in the carrying out of, that they were going to assist in and directly subject Pl. Kennedy to unwarranted detainment in the form of pulling handcuffs out in a confined space and holding them up to Pl. Kennedy's face while at the same time stating to Pl. Kennedy, "At the end of the day" in Def. Morris's office for Pl. Kennedy speaking out about the mishandling of a police investigation conducted by Def. H.P.P.C. Smith and Def. Doe and informing a private citizen that he will show him how to make a complaint on H.P.P.C. Def. Smith constituted illegal detainment in violation of the Fourth Amendment to the United States Constitution.

3). That, the actions of H.P.P.C. Def. Smith pulling their handcuffs out in the confined office and holding them up to Pl. Kennedy's face, while at the same time stating to Pl. Kennedy, "At the end of the day," making Pl. Kennedy, believe he was about to be arrested, constituted illegal detainment in violation of the Fourth Amendment to the United States Constitution.

4). That, the actions of H.P.P.C. Def. Smith in fabricating that Pl. Kennedy had

engaged in illegal conduct to Def. Morris, the Director of the homeless shelter, for the sole reason to detrimentally effect Pl. Kennedy's ability to continue to reside at the homeless shelter, due that Pl. Kennedy spoke out about the mishandling of a police investigation and informed a citizen that he will show him how to file a complaint and will file one himself on H.P.P.C. Def. Smith constituted retaliation in violation of the First Amendment to the United States Constitution.

5). That the actions of Def. Doe of walking in on H.P.P.C. Def. Smith illegally restraining Pl. Kennedy. And Def. Doe himself deliberately, intentionally and knowingly failing to deter or otherwise stop H.P.P.C. Def. Smith from engaging in the unwarranted restraint of Pl. Kennedy constituted collaboration in the illegal detainment in violation of the Fourth Amendment to the United States Constitution.

6). That, the actions of H.P.P.C. Def. Smith, Def Morris and Def. Blacks conspiring together, coming to an agreement and actually carrying out intimidating Pl. Kennedy in the form of H.P.P.C. Def. Smith calling Def. Blacks to agree to walk into the homeless shelter and while in Pl. Kennedy's presence, blurting out in an intimidating manner, "Who is Montaz Kennedy?" while saying it's "Corporal Smith" and at the same time handing the phone over to Def. Morris in front of Pl. Kennedy in part due to Pl. informing that he will help someone file a complaint on Def. Smith and for pursuing evidence to support Pl. Kennedy's complaint on Def. Smith constituted retaliation in violation of the First Amendment to the United States Constitution.

7). That the actions Def. Thomas intentionally, deliberately and knowingly maintained a custom and policy of an inadequate training program for all Highland Park Police, including Def. H.P.P.C Def. Smith and H.P.P.O. Def. Doe in the area of knowing the Constitutional restraints placed on them when it comes to refraining from: retaliation, illegal detainment, intimidation, illegal arrest, conspiring with private citizens to violate other private citizens Constitutional rights and covering up illegal misconduct constituted a denial of Substantive Due Process in violation of the Fourteenth Amendment to the United States Constitution.

RELIEF REQUESTED:

COMPENSATORY DAMAGES

1). Award compensatory damages jointly and severally against Def. Smith and Def. Morris for the loss of appetite, loss of sleep, loss of weight, increased paranoid mind state, fear and mental and emotional anguish Pl. suffered as a result of Def(s). conspiring together, coming to an agreement and actually carrying out subjecting Pl. to retaliation in the form of, illegal detainment, illegal arrest and witness intimidation due to Pl. informing he would help someone file and file himself a complaint on Def. Smith.

2). Award compensatory damages jointly and severally against Def. Smith, Def. Morris and Def. Blacks for the loss of appetite, loss of weight, increased paranoid mind state, fear and mental and emotional anguish Pl. suffered as a result of Def(s). conspiring together, coming to an agreement and actually carrying out subjecting Pl. to retaliation in the form of witness intimidation due to Pl. pursuing a complaint on Def. Smith.

3). Award compensatory damages jointly and severally against Def. Smith and Def. Morris for the loss of appetite, loss of sleep, loss of weight, increased paranoid mind state, fear and mental and emotional anguish Pl. suffered as a result of Def(s). conspiring together, coming to an agreement and actually carrying out subjecting Pl. to illegal detainment and illegal arrest.

4). Award compensatory damages against Def. Smith for the loss of appetite, loss of sleep, loss of weight, increased paranoid mind state, fear and mental and emotional anguish Pl. suffered as a result of Def. Smith subjecting Pl. to retaliation in the form of illegal detainment and illegal arrest.

5). Award compensatory damages against Def. Smith for the loss of appetite, loss of sleep, loss of weight, increased paranoid mind state, fear and mental and emotional anguish Pl. suffered as a result of Def. Smith subjecting Pl. to retaliation in the form of intimidation of a witness.

6). Award compensatory damages against Def. Thomas for the loss of appetite, loss of sleep, loss of weight, increased paranoid mind state, fear and mental and emotional anguish Pl. suffered as a result of Def. Thomas intentionally, deliberately and knowingly maintaining a custom and policy of an inadequate training program, in the area of refraining from retaliatory acts, illegal detainment, illegal arrest and conspiring with private citizens to violate private citizens

Constitutional rights, for all Highland Park Police Officers, including H.P.P.C. Def. Smith and H.P.P.O. Def. Doe.

NOMINAL DAMAGES

1). Award nominal damages of $1.00

PUNITIVE DAMAGES

1). Award punitive damages against Def. Smith, Def. Morris, Def. Thomas, Def. Doe and Def. Blacks.

C:File

Date: 12-14-2023

Respectfully Submitted,

Montaz Kennedy

Montaz Kennedy

16745 Avon

Detroit, Mich. 48219

(313) 419-5578

email: thelostboy28@yahoo.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Montaz Kennedy

**DEFENDANTS**
India Smith

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Per
16745 Avon
Detroit, Mich. 48219  Ph# (313) 419-5578

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [x] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**TORTS — PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**PRISONER PETITIONS — Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
- **Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
Constitutional violations

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

**DATE** December 14, 2023
**SIGNATURE OF ATTORNEY OF RECORD** Montaz Kennedy

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____