UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONTAZ KENNEDY,

        Plaintiff,

                                       Case No.: 2:23-cv-13185
v.                               Hon. Gershwin A. Drain

INDIA SMITH,

        Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME [ECF No. 85], ACCEPTING AND ADOPTING MAGISTRATE JUDGE GRAND'S REPORT AND RECOMMENDATION [ECF No. 76], OVERRULING DEFENDANT INDIA SMITH'S OBJECTIONS [ECF No. 82], AND DENYING DEFENDANT INDIA SMITH'S MOTION FOR SUMMARY JUDGMENT [ECF No. 50]**

On December 14, 2023, Plaintiff Montaz Kennedy—proceeding *pro se* and *in forma pauperis*—filed the instant action against Defendant India Smith, alleging that she engaged in First Amendment retaliation by accusing him of a crime when he had criticized her and informed another person about how to file a complaint against

1

her.[1] The undersigned referred the case to Magistrate Judge David R. Grand for all pretrial proceedings. Defendant filed a Motion for Summary Judgment, and Judge Grand issued a Report and Recommendation ("R&R") recommending that Defendant's motion be denied and that Plaintiff's First Amendment retaliation claim proceed to trial. Defendant filed objections to the R&R. Thereafter, Plaintiff filed a Motion for an Extension of Time to file a response to Defendant's objections, stating that his response was late by one day and that this constitutes excusable neglect. He filed his response to the objections on the record simultaneously.

The Court has considered the briefing and the R&R. The Court concludes that Plaintiff's Motion for an Extension of Time [ECF No. 85] is **GRANTED,** that Magistrate Judge Grand's R&R [ECF No. 76] is **ACCEPTED** and **ADOPTED** as the Court's findings of fact and conclusions of law, that Defendant's objections [ECF No. 82] are **OVERRULED,** and that Defendant's Motion for Summary Judgment [ECF No. 50] is **DENIED.**

### I.  LAW & ANALYSIS

**A. Motion for an Extension of Time**

Defendant India Smith served her objections to Judge Grand's R&R on July 29, 2025. *See* ECF No. 82. Under Federal Rule of Civil Procedure 72, a party has 14

---

[1] Plaintiff brought other claims against other defendants, but these claims and defendants were dismissed earlier in the litigation. *See* ECF No. 7, PageID.49.

days after being served with the other party's objections to respond to those objections. *See* Fed. R. Civ. P. 72(b)(2). Plaintiff filed this motion, and his response to Defendant's objections, on August 18, 2025. *See* ECF No. 85; ECF No. 86.

Federal Rule of Civil Procedure 6 provides that:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b). To determine whether "excusable neglect" exists, courts consider the following five factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on the proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Plaintiff asserts that his response was due on August 12, 2025. ECF No. 85, PageID.951–52. In actuality, his response was due the following day—on August 13—because the day of the event that triggers the period is not counted when computing time under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 6(a)(1)(A). Even so, Plaintiff's motion and his response were filed on August 18,

3

2025, after the time to respond expired, which triggers the "excusable neglect" standard of Rule 6. *See* Fed. R. Civ. P. 6(b).

Although Plaintiff's motion was not filed on the docket until August 18, 2025, the Court notes that the document indicates that Plaintiff mailed it on August 13, 2025, which was within Plaintiff's original timeframe to respond. The Court finds this fact to be evidence of Plaintiff's good faith and lack of control over the delay. The Court also notes that Plaintiff's delay had no impact on the proceedings and did not prejudice Defendant in any way, because the Motion for Summary Judgment and R&R were still under consideration by the Court at that time. Finally, the Court credits Plaintiff's honesty that he simply overlooked the response deadline and accords him leniency due to his *pro se* status.

Therefore, Plaintiff's Motion for Enlargement of Time [ECF No. 85] is **GRANTED.** The Court has considered Plaintiff's response to Defendant's objections in ruling on the objections.

## B. Report and Recommendation[2]

The standard of review when examining a R&R is set forth in 28 U.S.C. § 636. It states that the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

---

[2] The Court relies on Judge Grand's recitation of the facts in his R&R and will not repeat them here.

made." § 636(b)(1). It may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Having considered the parties' arguments and Defendant's objections, the Court concludes that notwithstanding the objections, Judge Grand arrived at the correct result for the reasons stated in his R&R. The Court will discuss each of Defendant's objections and explain its reasoning for disregarding them.

### a. Objection One

In Defendant's first objection, she contends that Judge Grand erred in determining that Plaintiff has presented a question of material fact on his First Amendment retaliation claim. ECF No. 82, PageID.917–18.[3] Defendant makes a few points in argument, which the Court will address one by one.

---

[3] Notably, Defendant committed a portion of this objection to describing the legal standards for dismissal under Federal Rule of Civil Procedure 12 (even though the motion before the Court is a Motion for Summary Judgment under Federal Rule of Civil Procedure 56), arguing that "Plaintiff has not even alleged retaliation." ECF No. 82, PageID.918. As an initial matter, that assertion is plainly false. Plaintiff specifically alleged First Amendment retaliation as Count 4 of his complaint, *see* ECF No. 1, PageID.13–14, and the Court has already concluded at an earlier stage in the case that Plaintiff sufficiently stated a claim for First Amendment retaliation. *See* ECF No. 7, PageID.41–46. Moreover, to the extent that Defendant argues that Plaintiff's claim should be dismissed under Rule 12, that argument was not before Judge Grand, and the Court will not consider it. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[T]he Magistrate Judge Act… does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."); *see also Ward v. Cnty. of Wayne*, No. 21-cv-12742, 2024 WL 1174555, at *8 (E.D. Mich. Mar. 19, 2024) (collecting Sixth Circuit cases holding that arguments not raised before the magistrate judge in the first instance are forfeited on district court review).

5

To state a claim for First Amendment retaliation, a plaintiff must establish that:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two— that is, the adverse action was motivated at least in part by his protected conduct.

*Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017) (quoting *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)).

First, Defendant states that Plaintiff has not shown that Defendant threatened him with removal from the homeless shelter for potentially filing a complaint against Defendant, and that "[t]he threat of removal [from] the homeless shelter simply did not exist." *Id.* at PageID.918–19. The Court presumes that in making these assertions, Defendant means to contest Judge Grand's finding that there is a material question of fact whether Defendant took an "adverse action" against Plaintiff for purposes of First Amendment retaliation.

It is true that Defendant did not *directly* threaten Plaintiff with removal from the shelter. However, according to Plaintiff's deposition testimony, Defendant accused Plaintiff of intervening in a police investigation to Herbert Morris, the Director of the Oasis Shelter where Plaintiff resided at the time. ECF No. 50-1, PageID.474. Plaintiff described how "causing trouble out here in the community," particularly getting into trouble with the police, was "legitimate grounds" to be

6

ejected from the homeless shelter. *Id.* In determining whether an action is an "adverse action" for First Amendment retaliation purposes, the Court must consider whether the action "would deter a person of ordinary firmness from continuing to engage in [the protected] conduct [under the First Amendment]." *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021). The Court adheres to its previous statement that it is "uncontroversial" that the potential to lose shelter "in midwestern October would coerce a person of ordinary firmness, homeless or otherwise" to refrain from engaging in protected First Amendment activity. ECF No. 7, PageID.44. By accusing Plaintiff of a crime, Defendant potentially jeopardized Plaintiff's access to shelter. There is at least a material question of fact whether this action would deter a person of ordinary firmness from criticizing the police or filing a report about a police officer under these circumstances.

Second, Defendant claims that this case is similar to *Leach v. Balint*, in which the court dismissed the plaintiff's First Amendment retaliation claim on the pleadings. *See* No. 18-11814, 2019 WL 4267584, at *5 (E.D. Mich. Aug. 9, 2019), *report and recommendation adopted*, 2019 WL 4261165 (E.D. Mich. Sept. 9, 2019). In *Leach*, the court noted that to prevail on a First Amendment claim, the adverse action must be more than "de minimis" or "inconsequential." *Id.* However, even relatively minor actions may constitute an adverse action for First Amendment purposes where there are "concrete consequences." *Id.* The *Leach* court concluded

7

that the plaintiff had not alleged an adverse action where he was ordered to pay $61 for debris removal from his yard, particularly considering that the defendants could have fined him $500 for having the debris in his yard and the plaintiff suffered "no collateral consequences" otherwise. *Id.* Defendant contends that the present case is similar because Defendant "could have done more to get Plaintiff in 'trouble,'" such as arrest or detain him, but instead only issued him a "warning." ECF No. 82, PageID.920.

These cases are distinguishable. As an initial matter, the Court does not agree with some of the *Leach* court's analysis. The fact that the defendants could have fined the plaintiff $500, but instead only charged him $61 for debris removal, is more relevant to the causal connection prong of the First Amendment retaliation analysis (i.e., whether the defendants' action was intended as retaliation) than the adverse action prong.[4] Moreover, this is not a case where Plaintiff was threatened with a fine

---

[4] In Defendant's objection, she similarly blurs her argument between the adverse action prong and the causal connection prong. In her Motion for Summary Judgment, however, Defendant argued that Plaintiff's First Amendment retaliation claim fails on the merits *solely* based on the adverse action prong. *See* ECF No. 50, PageID.457–58. Defendant's failure to raise arguments based on the other retaliation prongs in her Motion for Summary Judgment renders them untimely and precludes the Court from considering them at this stage. *See Murr*, 200 F.3d at 902 n.1; *see also Ward*, 2024 WL 1174555, at *8.

However, even to the extent the Court considers Defendant's argument about the lack of causal connection, the argument fails. A plaintiff satisfies the "causal connection" element when the adverse action "was motivated at least in part by the plaintiff's protected conduct," which is typically demonstrated by circumstantial evidence. *Goodell v. Ervin*, 591 F. Supp. 3d 232, 240 (E.D. Mich. 2022). Temporal

8

of a de minimis amount of money. Rather, Plaintiff risked losing his place at the Oasis Shelter in the middle of the fall season. This potential "collateral consequence" to Defendant's actions is sufficiently "concrete" to warrant determination of the issue by a jury. *Leach*, 2019 WL 4267584, at *5.

Third, Defendant objects to Judge Grand's finding that Plaintiff's injury cannot be considered when determining whether he suffered an adverse action. *See* ECF No. 82, PageID.920–21. Defendant is correct that it may be appropriate to consider a plaintiff's injuries when determining whether there is cognizable "adverse action" for First Amendment retaliation purposes. In *Wurzelbacher v. Jones-Kelley*, the Sixth Circuit noted that when the alleged adverse action results in "nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." 675 F.3d 580, 584 (6th Cir. 2012). Thus, where the challenged action "has no consequences whatsoever, either immediate or long term," the action is not an

---

proximity between the protected conduct and the adverse action may be significant enough to "creat[e] an inference of retaliatory motive." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). However, "often evidence in addition to temporal proximity is required to permit the inference." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). Here, there is strong temporal proximity: Plaintiff criticized Defendant and indicated that he would tell the other shelter resident how to file a complaint against her, and Defendant immediately went into the shelter and began talking to Herbert Morris, the Oasis Shelter Director, about Plaintiff. In addition to temporal proximity, Defendant also "got a nasty attitude" after she heard Plaintiff's comments and displayed her handcuffs when Plaintiff tried to contest Defendant's accusations in front of Morris. *See* ECF No. 50-1, PageID.471, 474. This is sufficient evidence to create a question of fact whether Defendant's actions were motivated by Plaintiff's speech.

adverse action. *Id.* (quoting *Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir. 2002)). Moreover, unspecific allegations of emotional distress damages, without more, may be "too generalized" for a First Amendment retaliation claim to prevail. *Id.*

However, the focus of the "adverse action" inquiry is always objective— whether challenged action is "*capable* of deterring a person of ordinary firmness." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Thus, the relevance of considering a plaintiff's injuries in the adverse action context is in determining whether the "injury inflicted is so slight that it could not reasonably be expected to deter protected conduct" from an objective standpoint. *Id.* Importantly, the risks and threats that a plaintiff may face due to the alleged retaliation are, themselves, injuries to be considered in the adverse action context. *See id.* (citing *Dawes v. Walker*, 239 F.3d 498, 493 (2d Cir. 2001)) (noting that if the guards' references to the plaintiff as an "informant" or "rat" were harmless name-calling, they would not be First Amendment retaliation, but if they *risked* inciting other inmates against the plaintiff, it may constitute retaliation); *Wurzelbacher*, 675 F.3d at 584 (noting that whether a plaintiff suffered a *threat* to his economic livelihood is relevant to the adverse action inquiry). Ultimately, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell*, 308 F.3d at 603.

As the Court already discussed, there is a question of fact whether Plaintiff can prove an "adverse action" for First Amendment purposes. This is not a case where the *only* harm to Plaintiff was generalized emotional damages; rather, Plaintiff argues that he risked losing his housing at the Oasis Shelter due to Defendant's accusation. It is not dispositive that Plaintiff ultimately did not lose his housing and was not deterred from exercising his First Amendment rights himself—these facts go to the weight of the evidence of his First Amendment claim, not to the sufficiency. *Bell*, 308 F.3d at 606 ("[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted."). Considering the evidence in the light most favorable to Plaintiff, it is possible that a jury could determine that Defendant's actions would deter a person of ordinary firmness from engaging in protected First Amendment activity.

Finally, Defendant claims that Plaintiff has failed to show that Defendant engaged in a "concerted effort" with the Oasis Shelter to remove Plaintiff from the shelter, or that she had any "power of persuasion" over the rules as implemented by the shelter. ECF No. 82, PageID.921 (quoting *Davis v. Robert*, 192 F. Supp. 3d 847, 857–58 (E.D. Mich. 2016)). While these facts could support a finding of an "adverse action," they are not prerequisites to such a finding, as Defendant's argument would seem to suggest. These are merely the unique facts the *Davis* court relied upon in determining that the action taken in *that* case was an adverse action. *Davis*, 192 F.

11

Supp. 3d at 857–58. Regardless of the specific facts in a case, the ultimate inquiry is whether the action would deter a person of ordinary firmness from engaging in protected First Amendment activity. *Bell*, 308 F.3d at 606. In this case, Defendant is a law enforcement officer and accused Plaintiff of breaking the law in front of the Director of the Oasis Shelter. Plaintiff testified at his deposition that breaking the law would be a legitimate basis to remove him from the shelter. ECF No. 50-1, PageID.474. As discussed at length, it is a question of fact whether Defendant's accusations would deter a person of ordinary firmness from criticizing the police or filing a report against an officer.[5]

### b. Objection Two

In her second objection, Defendant disputes Judge Grand's finding that she failed to demonstrate her entitlement to qualified immunity. ECF No. 82, PageID.921. Judge Grand found that Defendant's qualified immunity argument was conclusory and therefore waived, and that, in any event, it failed on the merits. ECF No. 76, PageID.853–54.

---

[5] Moreover, it seems beyond argument that Defendant *does* have the "power of persuasion," as a law enforcement officer, to state with authority whether someone has committed a crime. According to Plaintiff's testimony and representations, Defendant's accusation that Plaintiff intervened in a police investigation risked the shelter terminating his residence there because that is a legitimate reason to be removed from the shelter. "[A] person of ordinary firmness would likely be deterred from participating in protected activity by the prospect of an influential public official endangering his… livelihood, irrespective of whether a third party was necessary to, or even did, pull the proverbial trigger." *Davis*, 192 F. Supp. 3d at 858.

The Court agrees with Judge Grand that Defendant's qualified immunity argument was conclusory and waived. Defendant's qualified immunity "analysis" in her Motion for Summary Judgment stated, without elaboration: "At all times, Officer Smith was acting in a lawful and/or immune fashion. Plaintiff has failed to establish an unlawful act committed by Officer Smith nor her understanding of a violation of said unlawful act." ECF No. 50, PageID.456. Plainly, those two sentences are nothing but conclusions—and vague ones at that. In raising a qualified immunity defense, however, "[d]efendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority." *Cockrun v. Berrien Cnty., Mich.*, 101 F.4th 416, 419 (6th Cir. 2024) (quoting *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)). Defendant's abject failure to make any effort to develop reasoned argumentation waived her qualified immunity defense. *See id.* ("Because Officers only mentioned qualified immunity in their motion for summary judgment in a perfunctory manner, devoid of applied facts or developed argumentation, they forfeited qualified immunity.").

Critically, Defendant's failure to develop a qualified immunity argument persists in Objection Two. Defendant commits most of the objection to mechanically reciting various legal standards. Defendant's "analysis," however, merely states without explanation that Defendant was conducting a "criminal investigation" and was "performing her duties as a Highland Park police officer," so she is entitled to

13

qualified immunity. ECF No. 82, PageID.922–24. Defendant does not describe what "crime" she was allegedly investigating, what "duties" she was performing as a police officer, or how accusing Plaintiff of committing a crime to Herbert Morris was one of those duties.[6] Simply put, Defendant offers the Court nothing but the skeleton of a qualified immunity argument and expects the Court to "put flesh on its bones." *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997)). The Court will not do so.[7]

### c. Objection 3

In her third objection, Defendant argues that Judge Grand erred in finding that Plaintiff "satisfied his burden [to show] that Defendant was not entitled to a qualified immunity defense." ECF No. 82, PageID.924. As the Court explained above, however, Defendant forfeited her qualified immunity argument by failing to support it with any facts or reasoned analysis. *See Cockrun*, 101 F.4th at 419.

Nevertheless, Plaintiff did respond to Defendant's qualified immunity defense. Plaintiff appropriately noted that "[g]overnment officials in general, and police officers in particular, may not exercise their authority for personal motives,

---

[6] Plaintiff astutely recognized Defendant's argumentative deficiencies in both his response to Defendant's Motion for Summary Judgment and his response to Defendant's objections. *See* ECF No. 72, PageID.811; ECF No. 86, PageID.958.
[7] Objection Two also incorporates an argument that Plaintiff provided no evidence that Defendant had a retaliatory motive. ECF No. 82, PageID.923. The Court addressed and rejected this contention in Footnote 4, *supra*.

14

particularly in response to real or perceived slights to their dignity." *Greene v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002). In this case, Plaintiff claims that he called Defendant's investigation tactics "dumb," Defendant overheard it, Defendant became upset, and Defendant informed Herbert Morris that Plaintiff had committed a crime. ECF No. 50-1, PageID.470–71. Importantly, "[i]t is well-established that '[t]he freedom of speech… protects the right of an ordinary citizen to criticize public officials… without fear of criminal or civil repercussions." *Anders*, 984 F.3d at 1184 (quoting *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 513 (6th Cir. 2020)). Although the Court need not decide as such, the Court notes that Judge Grand did not err in determining that Plaintiff defeated Defendant's claim of qualified immunity at this stage, considering the facts in the light most favorable to Plaintiff.[8]

## II. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for an Extension of Time [ECF No. 85] is **GRANTED,** Magistrate Judge Grand's Report and Recommendation [ECF No. 76] is **ACCEPTED** and **ADOPTED** as the Court's findings of fact and

---

[8] Perplexingly, in Objection Three, Defendant also fleetingly claims that she was exercising *her own* First Amendment rights by talking to Herbert Morris, so she cannot be held liable for that speech. *See* ECF No. 82, PageID.925–26. Not only is this argument cursory and completely undeveloped, but it was not raised in the Motion for Summary Judgment before the magistrate judge. Therefore, the argument is waived. *Murr*, 200 F.3d at 902 n.1.

conclusions of law, Defendant's Objections [ECF No. 82] are **OVERRULED,** and Defendant's Motion for Summary Judgment [ECF No. 50] is **DENIED.**

**IT IS SO ORDERED.**

Dated: September 2, 2025　　　　　　　　　　/s/Gershwin A. Drain
　　　　　　　　　　　　　　　　　　　　　　GERSHWIN A. DRAIN
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 2, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager